**OUTTEN & GOLDEN LLP**
Kathleen Peratis (KP2118)
Tammy Marzigliano (TM2934)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————x
COURTNEY PRINCE,

       Plaintiff,

- against -

CABLEVISION SYSTEMS CORPORATION,
d/b/a/ Madison Square Garden, a corporation;
JASON VOGEL, an individual; and RYAN HALKATT,
an individual,

       Defendants.
———————————————————x

04 CV 08151
CIV. NO.

**COMPLAINT**
**JURY TRIAL DEMANDED**

JUDGE SWEET

Plaintiff COURTNEY PRINCE, by her attorneys, Outten & Golden LLP, alleges and avers as follows:

### NATURE OF THE CASE

1. Courtney Prince was employed by defendant Cablevision d/b/a Madison Square Garden (hereinafter "MSG") as a member and captain of the Ranger City Skaters, the ice skating cheerleaders of the New York Rangers professional hockey team. She brings this action because she was solicited for sex by an MSG manager, defendant Jason Vogel of MSG's public relations department, and when MSG learned she had reported the incident to her fellow skaters, MSG discharged her for "disparaging" MSG managers in that she had accused them of being "sexual predators." In addition to the retaliatory discharge, MSG retaliated further against Prince by embarking upon a months'-long, intensive and

expensive investigation in an effort to obtain information about Prince that would discredit her, isolate her from the Skaters who had been her friends for many years, and frighten her into abandoning any pursuit of her rights under antidiscrimination laws.

2. Despite the actions of MSG, in March 2004, Prince filed charges against MSG with the Equal Employment Opportunity Commission claiming that she had been sexually harassed by an MSG manager and illegally fired, disparaged and intimidated thereafter.

3. After a thorough investigation, the EEOC issued a Determination in which it found Probable Cause to believe that Prince's allegations were true and proposed a remedy that required MSG to provide sexual harassment training for its employees and supervisors (which had not previously existed at MSG), to report regularly to the EEOC on its progress, and to pay a sum of money to Prince as damages for the injury she had suffered.

4. MSG has refused to admit that it violated Prince's rights and rejected the EEOC's proposed resolution. Prince now brings this action to enforce her rights.

## JURISDICTION AND VENUE

5. Prince brings this employment discrimination and civil rights action against MSG pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 et seq. ("NYCHRL"). She brings the action against defendants Vogel and Halkatt under NYSHRL and NYCHRL, and she makes claims against Vogel under New York State tort law.

6. This Court has original subject matter jurisdiction over the Title VII claims under 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States and are

brought to recover damages for deprivation of equal rights. It has supplemental subject matter jurisdiction over the State and City claims under 28 U.S.C. §1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b),(c) and 42 U.S.C. § 2000e-5(f)(3), because defendants have offices, conduct business, and can be found in this district, and the causes of action arose and the acts and omissions complained of occurred therein.

## ADMINISTRATIVE PREREQUISITES

8. Prince has duly satisfied all administrative prerequisites to commencing this action, as described herein.

9. In March 2004, Prince filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation against defendant MSG, attached as Exhibit 1.

10. The EEOC conducted a thorough investigation, interviewed witnesses and obtained documents.

11. On August 31, 2004, the EEOC issued a Determination in which it found Probable Cause to believe that Prince's allegations in her charge were true, attached as Exhibit 2.

12. The EEOC proposed a Conciliation Agreement, attached as Exhibit 3, requiring MSG to undertake remedial action including sexual harassment training for managers, reporting to the EEOC and payment of monetary damages to Prince.

13. Defendant rejected the EEOC's proposed Conciliation Agreement.

14. The EEOC duly issued to Prince a Notice of Right to Sue, and Prince has commenced this action within ninety days thereof.

15. Contemporaneously with the filing of this Complaint, Prince has mailed a copy, along with a letter of explanation, to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## THE PARTIES

16. Plaintiff is a resident of the State of New York.

17. Defendant MSG is a corporate entity with numerous offices and installations within this judicial district.

18. Upon information and belief, at all times pertinent hereto, MSG meets the definition of "employer" under all applicable statutes.

19. On information and belief, defendant Ryan Halkatt is a resident of the State of New York. He is an "aider and abettor" under NYSHRL and NYCHRL.

20. On information and belief, defendant Jason Vogel is a resident of the State of New York. He is an "aider and abettor" under NYCHRL and NYCHRL.

## FACTUAL ALLEGATIONS

21. Plaintiff Courtney Prince, a professional ice skater, was hired by MSG in 2001 to be a member of the Ranger City Skaters ("Skaters"), the ice skating cheerleaders of the Rangers professional hockey team, owned and operated by MSG. The team came into being in 2002.

22. Defendant Ryan Halkatt, a managerial employee of MSG, is Director, Game Day Presentation for the New York Rangers, and he was Prince's immediate supervisor.

4

23. On information and belief, defendant Jason Vogel, a managerial employee of MSG, is deputy director of Rangers' Public Relations and reports to John Rossco, a managerial employee of MSG, and Director of Rangers' Public Relations.

24. The Skaters were, at all times relevant, comprised of approximately twelve to thirteen female skaters.

25. In August 2003, Prince was named "captain" of the Skaters. As captain, she conveyed to the Skaters the directives of MSG management, and especially of defendant Halkatt, the immediate supervisor of the Skaters, regarding many aspects of their performance.

26. Prince devoted herself tirelessly to the good of the team, including bringing to the attention of Halkatt and MSG most of the individuals who were hired by MSG as Skaters, working with the Skaters on their skating skills, ensuring that their skating skills and their appearance were in conformance with the wishes and desires of Halkatt and MSG. She performed many duties for which she was not paid, such as choreographing the Skaters' routines, and designing, altering and adorning the costumes of the Skaters.

27. Halkatt and MSG repeatedly praised Prince and expressed their complete satisfaction with her performance. As recently as a week or two prior to her discharge, Halkatt indicated to Prince that she would remain captain of the team for the 2004-2005 season.

28. On December 22, 2003, Prince was in attendance at a post-Ranger game party at a bar called Lobby, near Madison Square Garden. Prince was required to attend such events as a regular part of her job and Halkatt instructed her to urge other Skaters to attend such events. On information and belief, MSG also advised the Skaters that they were expected to attend such events as part of their regular job duties, though they were not paid for their time attending such events.

29. At the December 22, 2003 event, Prince and several other Skaters agreed to go from Lobby to another location to have dinner together. When Prince was ready to leave, Vogel told her the Skaters had left and he and another male would take her to their location.

30. Prince got in a taxi with Vogel and the other male and they took her to a bar called Daddy-O's in the West Village. That is not the place to which the Skaters had gone and, on information and belief, Vogel knew it.

31. While at Daddy-O's, Vogel made sexual advances to Prince, solicited her for sex, and told her that he wanted to have sex with other women on the team. He tried to kiss her and put his tongue down her throat. Both Vogel and the other man told Prince they wanted to go into the bathroom and have sex with her right then and there. Prince rebuffed them and made it clear she was not interested in their proposals.

32. Prince kept looking for the arrival of the other Skaters. When she realized they were not coming, she left.

33. A few days later, Prince told some of the Skaters what had happened to her and cautioned them to be as circumspect with management as they had been instructed by MSG's management to be with the hockey players.

34. One of the Skaters asked Prince if the harasser was Mr. Vogel. When Prince said it was, that Skater told Prince and others present that Vogel's boss, John Rossco, who is, on information and belief, Director of Public Relations for MSG, had warned her, too, about Vogel.

35. MSG had indeed cautioned the Skaters not to fraternize with the Ranger hockey players. They did not instruct the Skaters not to fraternize with MSG management. In fact, MSG

management told Prince which Skaters they "fancied," and MSG, including Halkatt, told her to make sure certain Skaters attended after-game events.

36. On information and belief, MSG managers and supervisors, including Rossco and defendants Vogel and Halkatt, have met or taken the Skaters to bars and restaurants, and have purchased alcohol for Skaters who are under twenty-one years of age.

37. MSG learned of Prince's allegations that a member of management was a "sexual predator" and, on January 22, 2004, accused her of "disparaging" members of management by calling them sexual predators and, in effect, discharged her.

38. After January 22, 2004, Prince was never again called for work by MSG despite the fact that as captain, she had been required to attend every game, practice and event. She repeatedly asked MSG and Halkatt if she should report for work. Halkatt repeatedly told her she was not needed; at the same time, he solicited other Skaters to work at various games and events.

39. MSG deleted Prince from all team material and literature. She was cut out of the team picture, and all pictures and mentions of her were removed from the Skaters' website.

40. On information and belief many of the Skaters asked MSG about Prince's status; MSG refused to inform them as to Prince's status, but told some of them shortly after Prince was terminated that Prince was never returning to the team.

41. Although MSG discharged Prince, it continued to insist that it had not. In its presentations before the Equal Employment Opportunity Commission as late as June 2004, it continued to maintain that Prince had not been discharged.

42. After MSG discharged Prince in January 2004, it conducted a lengthy and, on information and belief, expensive so-called investigation for the purpose of unearthing whatever

7

disparaging material it could find about Prince to justify discharging her and to intimidate her from invoking her rights under applicable laws.

43. On information and belief, MSG interviewed each and every Skater, some twice and more, and questioned them regarding Prince, repeatedly suggesting disparaging information that had allegedly been raised by other Skaters and trying to get them to confirm it, as well as seeking additional disparaging information. MSG was interested not in the truth but rather in the assassination of Prince's character. Skaters reported positive and complimentary views and opinions of Prince to MSG, but such reports were ignored, while any negative comments were credited, pursued and exaggerated and then repeated in the next interview.

44. On information and belief, MSG told the Skaters during the course of the so-called investigation that they expected to provide various job benefits to those Skaters who were hired or retained on the team for the following year. MSG also cautioned the Skaters not to associate with Prince.

45. The pressure put on the Skaters in the course of the so-called investigation caused some of them who had been Prince's friends and supporters to turn against her. Some resisted this pressure and remained positive about Prince's work behavior and contribution to the team.

46. Based upon the "evidence" obtained during this post-discharge so-called investigation, MSG made claims against Prince that it had never made before.

47. For example, MSG accused Prince of forcing the Skaters to stuff their bras and to look sexually alluring. In fact, Prince had been told in the fall of 2003 by MSG that the Skaters were the "ugliest women in the NHL," and Prince understood that MSG was determined to change this state of affairs.

48. According to MSG's own policy, practice and rules, and Prince's own records, MSG and Halkatt mandated that the Skaters look sexually alluring. Prince conveyed to the Skaters only those directives and suggestions regarding their appearance that had been conveyed to her by Halkatt.

49. MSG also accused Prince of "pushing" diet pills on the Skaters, when in fact, Prince encouraged them not to take diet pills, despite the pressure on them by MSG to be and remain slim. For example, Halkatt took away the cookies in the Skaters' locker room because he said they were getting too fat.

50. On information and belief, MSG knows Skaters who actually did take and push diet pills, but MSG has taken no action against any such Skater.

51. MSG charged Prince with engaging in sex talk among the Skaters in the Skaters' locker room. In fact, MSG managers routinely engaged in inappropriate sex talk with certain Skaters, both in their offices and also at MSG-sponsored post-game parties and gatherings in which the Skaters were expected to participate.

52. The unlawful employment practices complained of above by defendants MSG, Halkatt and Vogel were and are willful and in malicious and reckless disregard of Prince's civil rights under federal, state, and local law.

### FIRST CAUSE OF ACTION
### Title VII

53. MSG illegally sexually harassed, discharged and retaliated against Prince in violation of Title VII.

54. As a result of MSG's unlawful acts of discrimination and retaliation, Prince suffered loss of pay and benefits, as well as severe emotional distress.

## SECOND CAUSE OF ACTION
## NYSHRL

55. Defendants illegally sexually harassed, discharged and retaliated against Prince in violation of the NYSHRL.

56. As a result of defendants' unlawful acts of discrimination and retaliation, Prince suffered loss of pay and benefits, as well as severe emotional distress.

## THIRD CAUSE OF ACTION
## NYCHRL

57. Defendants illegally sexually harassed, discharged and retaliated against Prince in violation of the NYCHRL.

58. As a result of defendants' unlawful acts of discrimination and retaliation, Prince suffered loss of pay and benefits, as well as severe emotional distress.

## FOURTH CAUSE OF ACTION
### Assault and Battery

59. Vogel intentionally placed Prince in apprehension of imminent harmful and offensive contact.

60. Vogel intentionally touched Prince without her consent and thereby caused offensive bodily contact with her.

61. By the acts alleged herein, Vogel is liable to Prince for assault and battery.

## FIFTH CAUSE OF ACTION
### Aiding and Abetting Under NYSHRL

62. By the acts alleged herein, Halkatt is liable to Prince for aiding and abetting the illegal acts of MSG under NYSHRL.

## SIXTH CAUSE OF ACTION
### Aiding and Abetting Under NYCHRL

63. By the acts alleged herein, Halkatt is liable to Prince for aiding and abetting the illegal acts of MSG under the NYCHRL.

**WHEREFORE**, plaintiff respectfully requests that upon trial this Court enter judgment:

A.  Declaring that the actions and practices of defendants violated Title VII, the NYSHRL, and NYCHRL and enjoining such violations;

B.  Directing defendants MSG, Vogel and Halkatt to make Prince whole by providing her with back pay, reinstatement or front pay in lieu thereof, and reimbursement for lost Social Security and other employment-related benefits;

C.  Directing defendants MSG, Vogel and Halkatt to pay Prince compensatory damages for the emotional distress, pain, and suffering caused to her by the their sexual harassment, discrimination and retaliation;

D.  Directing Vogel to pay Prince compensatory damages for the emotional distress, pain, and suffering caused to his assault and battery;

E.  Directing defendants MSG, Halkatt and Vogel to pay Prince punitive damages sufficient to punish and deter continuation of their unlawful employment practices;

F.  Awarding Prince reasonable attorneys' fees, expert witness fees, and costs, as provided by Title VII, 42 U.S.C. § 1988, and NYCHRL; and

G.  Granting such additional relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated:   New York, New York
         October 18, 2004

                                    OUTTEN & GOLDEN LLP

                              By:   _Kathleen Peratis_
                                    Kathleen Peratis (2118)
                                    3 Park Avenue 29th floor
                                    New York, New York 10016
                                    Telephone: (212) 245-1000

11

EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☐ EEOC | |

_____ and EEOC
*State or local Agency, if any*

| NAME (*Indicate Mr., Ms., Mrs.*)<br>Courtney Prince | HOME TELEPHONE (*Include Area Code*)<br>212-217-2524 | |
|---|---|---|
| STREET ADDRESS<br>2100 Chambers Street, apt. 7V | CITY, STATE & ZIP CODE<br>New York, New York 10282 | DATE OF BIRTH<br>9/29/1975 |

NAME OF THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME<br>Madison Square Garden | NUMBER OF EMPLOYEES, MEMBERS<br>Over 300 | TELEPHONE (*Include Area Code*) |
|---|---|---|
| STREET ADDRESS     CITY, STATE, AND ZIP CODE<br>2 Penn Plaza     New York, NY | | COUNTY<br>New York |
| NAME<br>Cablevision Systems Corp. | | TELEPHONE NUMBER (*Include Area Code*) |
| STREET ADDRESS     CITY, STATE, ZIP CODE<br>1111 Stewart Avenue     Bethpage, New York 11714-3581 | | COUNTY<br>Westchester |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (adea/epa)     LATEST (ALL)<br>January 22, 2004 |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION<br>☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ (specify) | CONTINUING ACTION ☐ |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet (s)):

1. I was the captain of the Ranger City Skaters, the "cheerleaders" of the New York Ranger Hockey team. There are twelve other young women skaters who are members of the team, most or all of whom are younger than I.
2. I have been the captain since September 2003. My performance had never been criticized until January 22, 2004, and my immediate supervisor, Ryan Halkatt, talked to me on or about January 9, 2004, about my being the captain for the coming season.
3. I experienced an incident of sexual harassment by an individual who is a member of management of Madison Square Garden on December 26, 2003. He told me he wanted to have sex with me and he told me the names of the other women on the team whom he also wanted to have sex with. He also tried to kiss me. I rebuffed his advances.
4. A week or so later when I was next with several of the team members, I told them that this man (and I named him) had made inappropriate sexual advances toward me and I warned them to stay away from him. One of the skaters told me at that time that this man's boss, a higher level management employee at MSG, had previously told her the same thing.
5. On information and belief, Mr. Halkatt learned of my allegation regarding this management employee on or about January 15, 2004. Apparently, he heard that I had accused several members of management including himself, which I had not.
6. On January 22, 2004, Mr. Halkatt and his supervisor Ms. Baumgartner suspended me for, among other reasons, "accusing MSG personnel, including Mr. Halkatt, of being sexual predators." They subsequently articulated other reasons as well, all of which are pretexts, as is explained below.
7. As of January 22, 2004, I have been off the schedule and I have now as of this week been taken off the team web site. Although respondents deny it, I believe I have been effectively discharged.
8. I believe I was suspended and discharged in retaliation for reporting to my teammates that a member of management had engaged in sexual harassment.
9. Respondents claimed that they took adverse action against me because, they say, I forced the skaters to stuff their bras, lose weight, look sexually alluring and that I threatened them with job loss if they did not. In fact, Mr. Halkatt and other employees of respondents explicitly required all these things because it was their goal that the skaters be sexually alluring.. Placing "blame" on me is a pretext.
10. Respondents also stated that I engaged in "sex talk" with the team members, most of whom have been my friends for many years and many of whom were part of my social circle. In fact, many members of MSG management, mature men, engage in and initiate inappropriate behavior with young and underage skaters, including sex talk and facilitating consumption of alcohol.
11. All of MSG's reasons for their adverse action against me are pretexts.

| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date *March 4, 2004*    Charging Party (Signature) | *NOTARY – (When necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year)<br><br>INEZ SANTIAGO<br>Notary Public, State of New York<br>No. 01SA6056178<br>Qualified in New York County<br>Commission Expires April 16, 2007 |
|---|---|

EEOC FORM 5 (Test 10/94)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

*Courtney Prince,*                    *Charging Party*
c/o Kathleen Peratis, Esq.
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016-5902

---

*Madison Square Garden/*              *Respondent*
*Cablevision Systems Corporation*
c/o Christopher A. Parlo, Esq. (as of April 13, 2004)
Morgan Lewis & Brockius, LLP
101 Park Avenue
New York, NY 10178

Re:  Courtney Prince v. Madison Square Garden/*Cable Systems Corporation*
     EEOC Charge No. 160-2004-01596

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charges filed under Title VII of the Civil Rights Act of 1964, as amended.

All requirements for coverage have been met. Charging Party, *Courtney Prince (Charging Party")*, was an employee of Respondent, *Madison Square Garden/Cable Systems Corporation* ("Respondent"), and was working in Respondent's Madison Square Garden site at the time that the unlawful discrimination took place. Respondent has over 500 + employees. Charging Party alleges that Respondent violated Title VII by subjecting her to sexual harassment and a hostile work environment because of her sex, female. Charging Party alleges that Respondent discharged her in retaliation for opposing discriminatory employment practices.

The Commission's investigation supports Charging Party's allegations. There is evidence that Respondent's Managers and/or employees, sexually harassed Charging Party and subjected her to a hostile work environment, including to but not limited to severe and pervasive verbal sexual harassment making comments such about her physical appearance.

Re: Courtney Prince v. Madison Square Garden/*Cable Systems Corporation*
EEOC Charge No. 160-2004-01596

The Commission's investigation also supports Charging Party's allegations that she was terminated in retaliation for having opposed the harassment. The evidence obtained by the Commission in its investigation indicates that Respondent did not take reasonable care to prevent or correct discrimination and harassment in the workplace.

There is evidence that Respondent knew or should have known of the discrimination and harassment. There is evidence that Respondent's Madison Square Garden Managers, were aware of the harassment and/or of complaints about the harassment, and that efforts were made to report the unlawful conduct to corporate headquarters. Respondent did not have an effective mechanism for reporting and handling complaints, and Respondent did not adequately and appropriately respond to complaints of discrimination and harassment. Respondent is vicariously liable for the acts of its management supervisors, and employees.

Based on the evidence obtained in the Commission's investigation, I find that there is cause to believe that Respondent violated Title VII of the Civil Rights Act of 1964, as amended, and that Respondent subjected Charging Party to sexual harassment and a hostile work environment because of her sex, female, that Charging Party was retaliated against for opposing discriminatory employment practices and for filing a discrimination charge and/or participating in the investigatory process.

Section 706(b) of Title VII requires that if the Commission determines that there is reasonable cause to believe that violations have occurred, the Commission shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites the parties to join with the Commission in a collective effort toward a just resolution of the matter.

A representative of this office will be in contact with each party in the near future to begin the conciliation process.

Re: Courtney Prince v. Madison Square Garden/*Cable Systems Corporation*
EEOC Charge No. 160-2004-01596

Disclosure of the information obtained by the Commission during the conciliation process will be made in accordance with Section 706(b) of Title VII and Section 1601.26 of the Commission's Procedural regulations. When Respondent declines to enter into settlement discussions, or when the Commission's representative is unable to secure a settlement acceptable to the Office Director, the Director shall so inform the parties in writing and advise them of the court enforcement alternative available to Charging Parties, aggrieved persons and the Commission.

On Behalf of the Commission:

08/31/04
Date

Spencer H. Lewis, Jr.
District Director

cc: File

EXHIBIT 3



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Patricia M. Araujo
Federal Investigator
Phone (212) 336-3681
Fax (212) 336-3790

Via facsimile and regular mail
Facsimile No.: (212) 309-6001 & (212) 977-4005

August 31, 2004

*Courtney Prince,*                    *Charging Party*
c/o Kathleen Peratis, Esq.
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016-5902

*Madison Square Garden/*              *Respondent*
*Cablevision Systems Corporation*
c/o Christopher A. Parlo, Esq. (as of April 13, 2004)
Morgan Lewis & Brockius, LLP
101 Park Avenue
New York, NY 10178

Re:   Courtney Prince v. Madison Square Garden/*Cable Systems Corporation*
      EEOC Charge No. 160-2004-01596

Dear Attorney Parlo:

Pursuant to the Letter of Determination ("LOD") that was issued in the above referenced matter, please be advised that the Commission is interested in commencing the conciliation process. At this time, I would like to outline the remedies for the discriminatory employment practices found to have occurred in violation of Title VII of the 1964 Civil Rights Act, as amended.

The Commission has determined that the following terms are appropriate for the conciliation of this matter:

1.   Respondent will comply with Title VII of the 1964 Civil Rights Act, as amended;

2.   Within four (4) months from the date that this Agreement is approved by the Commission, Respondent will provide no fewer than four (4) hours of training in Federal laws prohibiting discrimination in employment, with a focus on sexual harassment discrimination, for all Respondent's employees, to be conducted by an outside agency approved by the Commission;

Re: Courtney Prince v. Madison Square Garden/*Cable Systems Corporation*
EEOC Charge No. 160-2004-01596
Page 2

3. Within four (4) months from the date that this Agreement is approved by the Commission, Respondent will provide no fewer than two (2) additional hours of training in Federal laws prohibiting discrimination in employment for all management/supervisory employees of Respondent, including but not limited to a separate training for those managers working in *Madison Square Garden*;

4. Within five days of compliance, Respondent will furnish EEOC with written documentation, including a signed attendance list, that it has complied with paragraphs 2 and 3 of this Agreement;

5. ~~Respondent will repeat the training in paragraphs 2 and 4 and the reporting in paragraph 3~~ of this Agreement annually for five years by the anniversary of this Agreement;

6. Within five (5) days from the date that this Agreement is approved by the Commission, Respondent will post EEOC's poster in places visually accessible to applicants and employees of the Respondent;

7. Within five (5) days from the date that this Agreement is approved by the Commission, Respondent will post a remedial Notice pursuant to the conciliation agreement in places visually accessible to applicants and employees of Respondent;

8. Within one (1) month from the date that this Agreement is approved by the Commission, Respondent will develop and adopt an effective anti-discrimination and anti-harassment policy and will distribute such policy to all employees. Prior to implementation, the Commission will review and approve the proposed procedure.

9. Within one (1) month from the date that this Agreement is approved by the Commission, Respondent will develop and adopt an effective complaint procedure for employees who believe that they have been discriminated against and will distribute such policy to all employees. Prior to implementation, the Commission will review and approve the proposed procedure.

10. Respondent agrees that the EEOC may monitor compliance with the Conciliation Agreement for a period of five (5) years from the date that the Agreement is approved by the Commission, by inspection of the Respondent's premises, records and interviews with employees at reasonable times. Respondent agrees to make available for inspection and copying any records reasonably related to any of these areas, upon notice by the Commission;

Re: Courtney Prince v. Madison Square Garden/*Cable Systems Corporation*
EEOC Charge No. 160-2004-01596
Page 3

11. Within five (5) days from the date that this Agreement is approved by the Commission, Respondent will pay Charging Party up to $500,000 in damages (including but not limited to Back Pay, Front Pay, Attorney fees, and up to $300,000 in Compensatory damages);

12. Respondent will not retaliate against any other person(s) because the individual(s) provided information or assistance, or participated in any other manner, investigation, or proceeding relating to these charges or this Agreement.

If Respondent is interested in conciliation discussions consistent with EEOC's positions regarding these charges, please let me know by Friday, September 10, 2004. Should you have any specific questions regarding the terms for the conciliation of this matter, please contact me at (212) 336-3681, between the hours of 7:00 a.m. and 4:30 p.m. Thank you.

If I do not hear back from you by Friday, September 10, 2004, I will assume Respondent is not interested in participating in the conciliation process regarding the above-referenced charges.

Thank you for your attention to this matter.

Sincerely

Patricia Araujo
Senior Investigator

cc: File