UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
COURTNEY PRINCE,

                    Plaintiff,

        - against -

CABLEVISION SYSTEMS CORPORATION,
d/b/a Madison square Garden, a
corporation; JASON VOGEL, an
individual; and RYAN HALKATT,
an individual,

                    Defendants.
----------------------------------------X

04 Civ. 8151 (RWS)

O P I N I O N

A P P E A R A N C E S:

        OUTTEN & GOLDEN
        Attorneys for Plaintiff
        Three Park Avenue, 29th Floor
        New York, NY 10016
        By:  KATHLEEN PERATIS, ESQ.
             TAMMY MARZIGLIANO, ESQ.
             Of Counsel

        MORGAN, LEWIS & BOCKIUS
        Attorneys for Defendants
        101 Park Avenue
        New York, NY 10178
        By:  CHRISTOPHER A. PARLO, ESQ.
             CHRISTOPHER P. REYNOLDS, ESQ.
             Of Counsel

Sweet, D.J.,

Defendants Cablevision Systems Corporation ("Cablevision"), Madison Square Garden ("MSG"), a limited partnership, Jason Vogel ("Vogel") and Ryan Halkatt ("Halkatt") (collectively, the "Defendants") have moved pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss in part the Complaint of Courtney Prince ("Prince") alleging employment discrimination in violation of federal, state, and municipal statute, and common law tort. For the reasons set forth below, the motion is granted in part.

## **Prior Proceedings**

Prince filed her Complaint on October 18, 2004. The First Cause of Action asserts claims pursuant to 42 U.S.C. §§ 2000e _et seq._ ("Title VII") against MSG for sexual harassment, wrongful discharge, and retaliation. The Second and Third Causes of Action assert state[1] and municipal law[2] claims against all defendants for sexual harassment, wrongful discharge, and retaliation. The Fourth Cause of Action asserts state law assault and battery claims against Vogel. The Fifth and Sixth Causes of Action assert aiding and abetting claims against

---

[1] Prince's state law claims are brought pursuant to the New York State Human Rights Law ("NYSHRL"). _See_ N.Y. Exec. L. §§ 290 _et seq_.

[2] Prince's municipal law claims are brought pursuant to the New York City Human Rights Law ("NYCHRL"). _See_ N.Y.C. Admin. Code §§ 8-101 _et seq._

Halkatt pursuant to the NYSHRL and the NYCHRL.  On November 30, 2004, the Defendants answered the Complaint.

Pursuant to Fed. R. Civ. P. 12(b)(6), the Defendants moved on November 30, 2004 to dismiss in part the First, Second, and Third Causes of Action on the grounds that the allegations are insufficient to support claims of hostile work environment and to impute liability to MSG.  The Defendants also sought dismissal of the state and municipal law claims against the individual defendants on the following alternative grounds: (1) that the state and municipal claims are insufficient as a matter of law to support individual liability, and (2) that supplemental jurisdiction should not be exercised over the claims.

The Defendants have not moved to dismiss those portions of the First, Second and Third Causes of Action that allege that MSG retaliated against Prince in violation of federal, state, and municipal law.

The motion was heard and marked fully submitted on January 19, 2005.

**The Parties**

Prince is a professional figure skater who was employed as a member and captain of the Ranger City Skaters (the "Skaters").  The

Skaters are ice skating cheerleaders of the New York Rangers (the "Rangers"), a professional hockey team. (See Compl. ¶ 1).

MSG is a limited partnership and the former employer of Prince. (See id. ¶¶ 18, 21).

Vogel is an employee of MSG and deputy director of public relations for the Rangers. (See id. ¶ 23.)

Halkatt, who was Prince's immediate supervisor, is employed by MSG as the director of game-day presentation for the Rangers. (See id. ¶ 22.)

**The Facts**

The following facts are drawn from the allegations contained in the Complaint. All well-pleaded allegations are accepted as true for the purposes of this motion. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The following statements do not constitute findings of the Court.

Prince was hired by MSG in the fall of 2001 to be a member of the Skaters, which was formed in 2002. (See Compl. ¶ 21.) She was made captain of the team in August, 2003. (See id. ¶ 25.) In this capacity, Prince's duties included communicating to the Skaters the directives of management. (See id.)

MSG featured the Skaters on the Rangers website and as part of the team's public relations program. (See id. ¶ 39.) Among their duties, Prince and other Skaters were required to appear at certain post-game events, a duty for which they received no additional compensation. (See id. ¶ 28.)

It was MSG's official policy that the Skaters appear sexually alluring. (See id. ¶ 48.) MSG apparently encouraged the Skaters to stuff their bras to enhance their breast size and to follow strict diet regimens that included use of diet pills in some instances. (See id. ¶¶ 47, 49, 50.) Although MSG told the Skaters not to fraternize with Rangers team members, the Skaters were required or expected to fraternize with MSG management at post-game events. (See id. ¶¶ 28, 35, 51.) MSG management, including Halkatt, took steps to ensure that certain Skaters who were "fancied" by MSG managers attended these events, and he directed Prince to facilitate this directive. (See id. ¶ 35.) Underage Skaters have attended these events, at which alcohol was served. (See id. ¶ 36.) In some instances, MSG management personnel engaged in sex talk with the Skaters. (See id. ¶ 51.)

Prince, other Skaters, and members of MSG management were in attendance at one of these post-game events on December 22, 2003, at a bar called Lobby. (See id. ¶ 28). Prince and other Skaters agreed to leave Lobby and go to a bar called Daddy-O's. (See id. ¶ 24.) Vogel and another male accompanied Prince to Daddy-O's. (See id. ¶ 30.)

At Daddy-O's, Vogel attempted to kiss Prince, told her that he wanted to have sex with her and other Skaters, and solicited her to go into the public bathroom to have sex with him. (<u>See</u> <u>id.</u> ¶ 31.) Prince rejected these advances. (<u>See</u> <u>id.</u>) When Prince realized no other Skaters were arriving at Daddy-O's, she left. (<u>See</u> <u>id.</u> ¶ 32.)

Following these events, Prince advised her teammates what had happened with Vogel and warned them to stay away from him. (<u>See</u> <u>id.</u> ¶ 33.) One teammate said that an MSG manager had previously warned her about Vogel. (<u>See</u> <u>id.</u> ¶ 34.) Not long afterward, MSG learned that Prince had made allegations about a member of MSG management. (<u>See</u> <u>id.</u> ¶ 37.) On January 22, 2004, MSG alleged that Prince: (1) had disparaged MSG management and (2) had falsely accused a member of management of being a "sexual predator." (<u>See</u> <u>id.</u>) Thereafter, MSG and Halkatt did not call Prince for work, and they deleted references to her from the Rangers website. (<u>See</u> <u>id.</u> ¶¶ 38, 39.)

Prince filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming sexual harassment and retaliation, and the EEOC issued a finding of Probable Cause and an Order of Conciliation. (<u>See</u> <u>id.</u> ¶¶ 2-3, 11-12.)

## Discussion

As the Defendants have previously filed an answer in this action, their motion to dismiss under Rule 12(b)(6) is untimely. <u>See</u>

Fed. R. Civ. P. 12(b) (stating that "[a] motion making any of these defenses [under Rule 12(b)] shall be made before pleading if a further pleading is permitted"). However, the Second Circuit has held that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (footnote omitted) (noting that district courts within the Second Circuit as well as courts of appeals in other circuits have adopted the same conclusion). The Defendants' motion to dismiss under Rule 12(b)(6) thus will be construed as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and, as such, is deemed timely. See Fed. R. Civ. P. 12(c) (stating that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings"). The standard for granting a Rule 12(c) motion for judgment on the pleadings "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel, 259 F.3d at 126 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 368, 644 (2d Cir. 1998).

## A.    12(c) Standard

In considering a motion to dismiss pursuant to Rule 12(c),
Fed. R. Civ. P., the court should construe the complaint liberally,
"accepting all factual allegations in the complaint as true, and
drawing all reasonable inferences in the plaintiff's favor." Chambers
v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory
v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). "The issue is not whether
a plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims." Villager Pond, Inc.
v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974)).  Dismissal is only appropriate when
"it appears beyond doubt that the plaintiff can prove no set of facts
which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d
80, 83 (2d Cir. 2000).

The Supreme Court has clarified the standard for dismissal
as it relates to employment discrimination claims.  In Swierkiewicz v.
Sorema N.A., 534 U.S. 506 (2002), the Court, in reviewing the Second
Circuit's use of a heightened pleading standard for discrimination
claims brought under Title VII and the Age Discrimination in Employment
Act (ADEA), held that a plaintiff bringing an employment discrimination
claim is required only to comply with the liberal rules for notice
pleading set forth in Fed. R. Civ. P. 8(a)(2).  See id. at 507.  The
plaintiff must only provide "a short and plain statement of the claim
showing that the pleader is entitled to relief," Fed. R. Civ. P.

8(a)(2), and "[s]uch a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

**B.   Title VII/NYSHRL/NYCHRL Framework**

**1.   The Title VII Disparate Treatment Claims**

In the First Cause of Action, Prince alleges, inter alia, that MSG sexually harassed and discharged her in violation of Title VII.  The Second Circuit has stated that:

> a plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that [s]he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment.

Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (quoting Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001)).

With respect to disparate treatment claims, Title VII provides, in pertinent part, as follows:

> [i]t shall be an unlawful employment practice for an employer--
>
> > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of
such individual's race, color, religion, sex, or
national origin; or

(2) to limit, segregate, or classify his employees or
applicants for employment in any way which would
deprive or tend to deprive any individual of employment
opportunities or otherwise adversely affect his status
as an employee, because of such individual's race,
color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

## 2. **The Title VII Retaliation Claim**

The First Cause of Action also asserts that MSG retaliated
against Prince in violation of Title VII. With respect to retaliation,
Title VII provides, in pertinent part, that:

[i]t shall be an unlawful employment practice for an
employer to discriminate against any of his employees ...
because [such employee] has opposed any practice made an
unlawful employment practice by this subchapter, or because
he has made a charge, testified, assisted, or participated
in any manner in an investigation, proceeding, or hearing
under this subchapter.

42 U.S.C. § 2000e-3(a).

### 3.  The NYSHRL and NYCHRL Claims

The Second, Third, Fifth, and Sixth Causes of Action assert claims of sexual harassment, discharge and retaliation in violation of the NYSHRL and NYCHRL.  "[S]ince claims under the NYSHRL [and NYCHRL] are analyzed identically to claims under . . . Title VII, the outcome of an employment discrimination claim made pursuant to the NYSHRL [or NYCHRL] is the same as it is under . . . Title VII" and need not be addressed separately.  Smith v. Xerox Corp., 196 F.3d 358, 363 n.1 (2d Cir. 1999) (citing Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999)); see also Mack v. Otis Elevator Co., 326 F.3d 116, 122 n.2 (2d Cir. 2003) ("'Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims.'") (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000)).

### C.  The Complaint Is Dismissed With Prejudice As To Cablevision

Despite the fact that Prince has stated that she was employed by MSG, she has asserted employment discrimination claims against Cablevision.  The Court takes judicial notice of the following facts, which are matters of public record: (1) Madison Square Garden, L.P. is a limited partnership organized pursuant to the laws of the State of Delaware, and (2) Cablevision Systems Corporation is a corporation organized pursuant to the laws of the State of Delaware.  See, e.g.,

<u>Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts</u> <u>Worldwide, Inc.</u>, 369 F.3d 212 (2d Cir. 2004) (stating that in the context of a 12(b)(6) motion, a court may consider public records that are outside the pleadings).  In short, MSG and Cablevision are separate legal entities.

"[A]s a matter of policy, courts presume the separateness of legally distinct corporate entities." <u>Darden v. DaimlerChrysler N. A.</u> <u>Holding Corp.</u>, 191 F. Supp. 2d 382, 395 (S.D.N.Y. 2002) (dismissing Title VII claim where plaintiff failed to demonstrate a basis for treating two separate entities as a single employer).  Therefore, in order to state a viable Title VII claim against Cablevision (a parent entity) based on the conduct of MSG (its subsidiary), Prince must make allegations concerning one or more of the following factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." <u>Cook v. Arrowsmith Shelburne, Inc.</u>, 69 F.3d 1235, 1240 (2d Cir. 1995).  The second of these factors -- <u>i.e.</u>, centralized control of labor relations -- is accorded particular weight by courts of this district. <u>See</u>, <u>e.g.</u>, <u>Toriola v. New York City Transit Authority</u>, No. 02 Civ. 5902 (RJH), 2005 WL 550973, at *5 (S.D.N.Y. Mar. 9, 2005); <u>Parrish v. Sollecito</u>, 280 F. Supp. 2d 145, 157 (S.D.N.Y. 2003).

Here, Prince has alleged no facts to justify overcoming the presumption that Cablevision and MSG are separate entities.  The Complaint states that Prince was hired by MSG.  There is no allegation

that Cablevision was Prince's employer. Nor is there any allegation that Cablevision exerted centralized control over MSG's labor relations policies and decisions or took any other action that would give rise to Title VII liability pursuant to the <u>Cook</u> factors. In the absence of any such allegations, the Complaint must be dismissed as to Cablevision. <u>See</u> <u>id.</u>

Prince has suggested that an amended complaint may provide a basis for retaining Cablevision as a party. Based on the pleadings to date, such an outcome seems dubious. Therefore, Prince's claims against Cablevision are dismissed with prejudice.

**D.    The Title VII/NYSHRL/NYCHRL Harassment Claims Are Dismissed**

In the First Cause of Action, Prince asserts, <u>inter alia</u>, that MSG is liable for sexual harassment in violation of Title VII.[3] In the Second and Third Causes of Action, Prince asserts, <u>inter alia</u>,

---

[3] EEOC guidelines provide that:
> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a).

that MSG, Vogel and Halkatt are liable for harassment in violation of the NYSHRL and NYCHRL.

All three of these causes of action are based on the theory that Prince was subjected to a hostile work environment. <u>See</u> 29 C.F.R. § 1604.11(a)(3) (stating that "verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment").

In this circuit, the elements of a Title VII hostile work environment claim are well established:

> In order to prevail on a hostile work environment claim, a plaintiff must first show that "the harassment was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ... .'" <u>Alfano v. Costello</u>, 294 F.3d 365, 373 (2d Cir. 2002) (citations omitted); <u>see</u> <u>also</u> <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, [523 U.S. 75, 78] (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). Second, the plaintiff must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer. <u>Alfano</u>, 294 F.3d at 373... .
>
> Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." <u>Id.</u> at 374 (quoting <u>Harris v. Forklift Sys., Inc.</u>, [510 U.S. 17, 21] (1993)).

<u>Feingold</u>, 366 F.3d 138, 149-50 (2d Cir. 2004).

Prince has alleged a single instance of harassment occurring off company premises and an unspecified number of occasions of inappropriate sex talk.  Specifically, she alleges that on December 22, 2003, after attending a party at a bar, she, Vogel and another male voluntarily left the party and went to another bar.  At the second bar, Vogel allegedly made sexual advances toward Prince, solicited her for sex, and told her that he wanted to have sex with other women on the team.  He tried to kiss her and put his tongue down her throat.  Both Vogel and the other man told Prince they wanted to go into the bathroom and have sex with her.  Prince rejected Vogel's alleged advances, waited to see if any of the other Skaters were coming to the bar, and then left the bar by herself when no other Skaters arrived.  Prince has also alleged that MSG managers routinely engaged in inappropriate sex talk with certain Skaters, both in their offices and also at MSG-sponsored post-game parties and gatherings.

1.  **Prince Has Properly Alleged A Nexus Between The Alleged Conduct And Her Work Environment**

The Supreme Court has stated that in order for conduct to give rise to a hostile work environment, a nexus must exist between the alleged conduct and the work environment.  <u>See</u> <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22 (1993); <u>see</u> <u>also</u> <u>Carter v. Caring for</u>

the Homeless, 821 F. Supp. 225, at 228, 230 (S.D.N.Y. 1993) (stating that plaintiff's allegations of harassment, including an incident that occurred off work premises, were not related to his employment, and were, therefore, insufficient to state a hostile work environment claim).

Here, Prince provides the requisite nexus by alleging that attendance at post-game events was considered part of her job.

**2. <u>The Alleged Conduct At Issue Was Not Severe Or Pervasive Enough To Support A Hostile Or Environment Claim</u>**

Even if a sufficient nexus to the work environment has been alleged, the allegations must still satisfy the objective requirement that the conduct at issue be "'severe or pervasive enough to create an objectively hostile or abusive work environment,'" <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002) (quoting <u>Harris</u>, 510 U.S. at 21); <u>see also</u> <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997). A canvas of relevant decisions from this Circuit and beyond indicates that Prince's allegations fail to satisfy this objective requirement.

In <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759 (2d Cir. 1998), the Second Circuit affirmed the dismissal of a Title VII hostile work environment claim where the plaintiff's supervisor told her she had been voted the "sleekest ass" in the office and had "deliberately" touched her breasts with the papers in his hand. In so ruling, the

court reasoned that while the conduct is "obviously offensive and inappropriate," it was not "of sufficient severity or pervasiveness as to 'alter the conditions of her employment.'" Id. at 768 (internal citation omitted).

In Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273 (S.D.N.Y. 2002), the plaintiff alleged that a doctor affiliated with the defendant's dental program, in which the plaintiff worked, had engaged "in a long history of physical and sexual abuse," which culminated in the doctor's grabbing and squeezing her buttocks. The final event allegedly took place at a party held in a neighboring town that was not related to, or on the property of, the defendant. Id. at 277. After concluding that there was no long history of abuse, and that the only "encounter" was on the evening of the alleged sexual assault, the court dismissed the plaintiff's claims. Id. at 279-80. In granting defendant's motion to dismiss, the Court concluded:

> [Plaintiff] could prove no set of facts to establish that such a brief incident, which was not followed by any further sexual comments or touchings, could be objectively viewed as sexual harassment in the workplace. Indeed, the incident did not occur during the work hours or on work grounds, but rather after work at an off-site restaurant.

Id. at 280.

Similarly, in O'Dell v. Trans World Entm't Corp., 153 F. Supp. 2d 378, (S.D.N.Y. 2001), the plaintiff alleged: (1) that she had

been repeatedly asked out on dates by a fellow store manager, (2) that the store manager had made comments about her appearance (including that he "liked" certain clothes plaintiff wore); (3) that the employee had sent her numerous e-mails professing his love for her; and (4) that the store manager called her at work and at home, gave her gifts, and played her a song she found offensive. Id. at 386-87. This repeated conduct, occurring in the work environment, was held insufficient as a matter of law to establish a claim. Id. at 386.

Courts have held that conduct far more egregious than that alleged here was insufficient as a matter of law to establish a hostile work environment, even when such conduct occurred in the workplace. See, e.g., Benette v. Cinemark U.S.A., Inc., 295 F. Supp. 2d 243, 247 (W.D.N.Y. 2003) (manager's constant use of the word "fuck" and comments regarding female employees having a "nice ass" or "big tits" not severe or pervasive); Forts v. City of New York Dep't of Corrections, No. 00 Civ. 1716 (LTS), 2003 WL 21279439, at *6-*7 (S.D.N.Y. June 4, 2003) (several incidents, including comment about "sex in all positions," a bondage poster showing men and women, and a co-worker touching plaintiff's shoulder and running away, not severe or pervasive); Gregg v. N.Y. State Dep't of Tax'n & Fin., No. 94 Civ. 1408 (MBM), 1999 WL 225534, at *12 (S.D.N.Y. Apr. 19, 1999) (ten to fifteen allegedly inappropriate conversations, four instances of allegedly offensive touching, and repeated invitations to meals, drinks, and such over three to four months were not "sufficiently severe or pervasive"); Lucas, 54 F. Supp. 2d at 148 (brushing up against plaintiff on three

occasions, touching her hand, back or shoulder on five to seven occasions, suggesting that plaintiff "wanted to go to bed with [harasser], asking plaintiff the color of plaintiff's underwear on two to three occasions not sufficient to constitute a hostile work environment); Grossman v. The Gap, Inc., No. 96 Civ. 7063 (RPP), 1998 WL 142143, at *5 (S.D.N.Y. Mar. 25, 1998) (repeatedly asking plaintiff out on dates, following her around the store asking her to model a bathing suit, and making one sexually suggestive comment insufficient).

Other than the post-game incident involving Vogel, the only other allegation relating to the work environment is that unidentified managers routinely engaged in "inappropriate sex talk" with unidentified Skaters, on unspecified occasions. (see Compl. ¶ 51.) "Sex talk" is far from a term of art and fails to establish a pervasive and hostile environment.

Prince has argued that her allegations concerning a hostile work environment are sufficient to survive Defendants' motion in light of the Swierkiewicz decision. Prince's argument that Swierkiewicz poses an insurmountable obstacle to Defendants' 12(b)(6) motion is unavailing. Even after Swierkiewicz, courts have dismissed hostile work environment claims at the pleadings stage where, as here, the alleged conduct was not severe or pervasive enough to warrant relief. See, e.g., Gourdine v. Cabrini Med. Ctr., 307 F. Supp. 2d 587, 596 (S.D.N.Y. 2004) (dismissing claim and holding that alleged course of harassment, ridicule and criticism, including comment that plaintiff

would be better off marrying a Jewish man rather than an African-American, was insufficient to establish a hostile work environment claim); Whyte v. Contemporary Guidance Servs., Inc., No. 03 Civ. 5544 (GBD), 2004 WL 1497560, at *4 (S.D.N.Y. July 2, 2004) (granting dismissal of Title VII claims pursuant to Rule 12(b)(6)).

Prince also argues that dismissal is inappropriate because other courts have declined to dismiss hostile work environment claims based on individual acts. As a general rule, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n. 5 (2d Cir. 1995). Nonetheless, Prince is certainly correct that "harassment need not persist for a long time to be actionable, if it is sufficiently . . . intense." 3 Lex K. Larson, Employment Discrimination § 46.05[4][b] (2d ed. 2003). Moreover, as stated recently by a court of this circuit,

> [i]n some instances, a single act can create a hostile work environment -- "if, by itself, it can and does work a transformation of the plaintiff's workplace." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). Such single acts must be "extraordinarily severe." Id. (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). Compare Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (single instance of obscene comments by coworker sufficed to create hostile work environment under Title VII where comments were loud, prolonged, made in front of "a large group in which [the plaintiff] was the only female and many of the men were her subordinates,"and "included charges that [the plaintiff] had gained her office of lieutenant

only by performing fellatio."); <u>with</u> <u>Quinn</u>, 159 F.3d 759, 768 (2d Cir. 1998) (supervisor's comment to plaintiff on one occasion that "she had been voted the 'sleekest ass' in the office," and his "deliberat[e] touch[ing] [of her] breasts with some papers that he was holding in his hand" on another occasion, were inadequate to support hostile work environment claim).

<u>Brierly v. Deer Park Union Free School Dist.</u>, 359 F. Supp. 2d 275, 293 (E.D.N.Y. 2005).

In terms of its severity, the conduct at issue here (<u>i.e</u>, the December 22, 2003 incident at Daddy-O's in which Vogel made sexual advances and attempted to kiss Prince) is more akin to the conduct at issue in <u>Quinn</u> than that at issue in <u>Howley</u>. Therefore, it is concluded that this particular single incident is insufficient as a matter of law to support a hostile work environment claim. <u>See</u>, <u>e.g.</u>, <u>Balance v. Energy Transp. Corp.</u>, No. 00 Civ. 9180 (LMM), 2001 WL 1246586, at *11 (S.D.N.Y. Oct. 18, 2001) (on a motion to dismiss, holding that one incident in which defendant allegedly untied plaintiff's apron and touched her buttocks did not "amount to an environment permeated with discrimination"); <u>Lucas v. S. Nassau Communities Hosp.</u>, 54 F. Supp. 2d 141, 147 (E.D.N.Y. 1998) (dismissing sexual harassment claims where plaintiff alleged that her supervisor had touched her on several isolated occasions).

Prince argues that her sexual harassment claim must be viewed in light of MSG's alleged actions in creating a "sexualized atmosphere" in which the Skaters were rendered into "objects of sexual desire."

Prince argues that pursuant to a recent Second Circuit decision, a hostile work environment claim can be supported based on the fact that MSG permitted this sexualized environment to persist unabated.  See Petrosino v. Bell Atlantic, 385 F.3d 210 (2d Cir. 2004).  The Petrosino court held that:

> a reasonable jury could conclude that the persistent sexually offensive remarks at [the place of employment] and the graffiti [drawn by plaintiff's co-workers there] were particularly insulting to women because these actions cast women in a demeaning role: as objects of sex-based ridicule and subjects for sexual exploitation.  It is within this context that the remaining evidence of sexual harassment must be considered.  In this light, plaintiff's sexual assault by a drunken co-worker within a few months of joining the ... department might well be viewed by a reasonable jury not simply as an isolated incident but as a tangible extension of the pervasive demeaning talk to [plaintiff] personally.  The assault communicated to plaintiff that she was perceived, at least by one co-worker, not as a professional colleague, but as one more woman available for sexual exploitation.

Id. at 224.  In Petrosino, the record contained facts that the "workplace disparagement of women . . . [was] repeated day after day over the course of several years without supervisory intervention . . . ."  Id. at 222.  Such disparagement included: (i) crude sexual graffiti, (ii) sexual comments conveying a profound disrespect for women, and (iii) disparaging sexually explicit language directed at plaintiff.  Id. at 214-15.

In contrast, with the exception of the incident at Daddy-O's, the Complaint fails to allege a single instance in which Prince ever

heard or otherwise witnessed a single derogatory comment or other instance of sex-based offensive conduct in the workplace at any time. Other than Vogel's conduct, the Complaint does not allege any conduct by co-workers witnessed by Prince that occurred in the workplace that would support her conclusory allegation of a "sexualized atmosphere," or that she was present for, or affected by, any such conduct. Because the hostile environment claims fail to give fair notice of any facts or grounds which could support them, these claims are dismissed. <u>See</u>, <u>e.g.</u>, <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1271 (11th Cir. 2004) (stating that <u>Swierkiewicz</u> "did not even remotely suggest that a pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."); <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004) ("From [<u>Swierkiewicz</u>] we intuit that . . . the complaint should at least set forth minimal facts as to who did what to whom, when, where and why"); <u>Bass v. E.I. Dupont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (stating that "[t]he words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").

Furthermore, since Prince has not alleged that she witnessed any sex-based, inappropriate conduct other than the incident at Daddy-O's, she has failed to plead sufficient facts to show that she subjectively perceived the work atmosphere to be "sexualized," let

alone hostile. This defect in her Complaint provides an independent basis for the dismissal of her harassment claim. <u>See</u>, <u>e.g.</u>, <u>Alfano</u>, 294 F.3d at 374 (stating that for a hostile work environment to be actionable, the victim must also subjectively perceive the environment to be hostile).

Because the Complaint fails to give Defendants fair notice of the grounds upon which Prince's claim of a "sexualized atmosphere" rests, this context cannot be used to transform a single inappropriate incident in a bar into the culmination of a course of workplace conduct.

Furthermore, Prince has failed to allege adequately that "a specific basis exists for imputing the conduct that created the hostile environment to the employer." <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 122 (2d Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 562 (2003) (citations omitted). Prince's argument for imputing liability to MSG is that the Court must infer from the Complaint that MSG was aware of prior instances of inappropriate conduct by Vogel and that MSG therefore should have taken steps to prevent any repeat of such conduct. It is true that Prince has alleged that an unnamed Skater told her that "John Rossco," Vogel's supervisor, had warned her about Vogel, thus implying knowledge on the part of MSG. (<u>See</u> Compl. ¶ 34.)

However, is no allegation that Vogel ever engaged in any prior improper conduct at any time, that any such conduct occurred in

the MSG workplace, or that MSG had knowledge of any such prior conduct. In order to allege that liability can be imputed to MSG, Prince must give MSG and Vogel fair notice of the grounds for the imputation of such liability.

As to the only other basis for imputing liability to MSG (<u>i.e.</u>, that once it learned of the alleged harassment it did nothing about it), there are no facts in the Complaint upon which relief could be granted. The Complaint acknowledges that an investigation was immediately initiated. (<u>See</u> Compl. ¶¶ 1, 42, 43.) There is no allegation that there was no complaint procedure, or that no action was taken when MSG learned of the conduct at issue. Therefore, the allegations are insufficient to impute liability to MSG on this basis.

### E. The Termination Claims Are Dismissed As Duplicative Of The Retaliation Claims

In the First, Second and Third Causes of Action, Prince alleges that she was terminated in violation of Title VII, NYSHRA and NYCHRA. Disparate treatment claims such as these -- *i.e.*, those based on adverse employment actions -- are analyzed pursuant to the test announced in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, (1973). In order to establish a <u>prima facie</u> case of discrimination on this basis, a plaintiff must show: (1) that he or she is a member of a protected class, (2) that he or she was qualified for the position in question, (3) that he or she suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. <u>See id</u>. at 802; <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003); <u>Collins v. New York City Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002); <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000).

There are no allegations in the Complaint that could support an inference that the termination occurred in circumstances giving rise to an inference of discrimination. Moreover, as pled, the termination claims are duplicative of the retaliation claims.

**F.     The Retaliation Claims Against Halkatt and Vogel Are Dismissed**

The Second and Third Causes of Action assert NYSHRL/NYCHRL retaliation claims against Halkatt.  "To establish a prima facie case of . . . retaliation, a plaintiff must show that '(1) she was engaged in [a protected] activity . . . ; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.'"  Carchidi v. Kenmore Development, 123 Fed. Appx. 435, 436 (2d Cir. 2005) (quoting Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000)).

Since there are no allegations that either Halkatt or Vogel (1) had an ownership interest in MSG, or (2) had the power to hire or fire Prince, these allegations fail as a matter of law.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (stating that "the New York Court of Appeals held that an employee is not individually subject to suit under [the NYSHRL] as an employer 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.'") (quoting Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)).  Moreover, since neither Halkatt nor Vogel is alleged to have participated in the adverse job action against Prince, the retaliation claims asserted against them fail as a matter of law.

**G.** **The Aiding and Abetting Claims Against Halkatt Are Dismissed**

The Fifth and Sixth Causes of Action assert NYSHRL/NYCHRL aiding and abetting claims against Halkatt.  In support of these claims, the Complaint alleges that Halkatt engaged in the following conduct:

- ! issuing directives to the Skaters through Prince. (<u>See</u> Compl. ¶ 25.)

- ! instructing Prince to urge other Skaters to attend post-game parties.  (<u>See</u> <u>id.</u> ¶ 28.)

- ! telling Prince to make sure certain Skaters attended after-game events.  (<u>See</u> <u>id.</u> ¶ 35.)

- ! telling Prince that she was not needed when she asked if she should report for work.  (<u>See</u> <u>id.</u> ¶ 38.)

- ! taking away the cookies in the Skaters' locker room because he said they were getting too fat.  (<u>See</u> <u>id.</u>)

Prince contends that the basis for naming Halkatt as an aider and abettor is his alleged participation in discrimination, but no discrimination by Halkatt or participation in discrimination by Halkatt is alleged in the Complaint.  In the Complaint, MSG, not Halkatt, is alleged to have terminated Prince's employment. (<u>See</u> <u>id.</u> ¶¶ 30, 31, 42.)  In her opposition papers, Prince concedes that MSG terminated her, and that Halkatt merely confirmed the action taken by MSG.

28

The Second Circuit has held that pursuant to the aider and abettor provisions of the NYSHRL, "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable." <u>Tomka</u>, 66 F.3d at 1317. Here the conduct giving rise to the retaliation claims was MSG's alleged retaliation against Prince for complaining of Vogel's conduct at the bar. There is no allegation that Halkatt participated in this conduct. Accordingly, the aiding and abetting claims against Halkatt are dismissed.

**H.** **<u>Prince Has Stated Assault and Battery Claims Against Vogel</u>**

The Fourth Cause of Action asserts assault and battery claims against Vogel based on his conduct at Daddy-O's on the night of December 22, 2003. Under New York law, "an assault is an intentional attempt, displayed by violence or threatening gesture, to do injury to, or commit a battery upon, the person of another." 6A Allan Schwartz, <u>New York Jurisprudence 2d</u> § 1 (Assault -- Civil Aspects) (2003). Under New York law, "[a] battery is an intentional wrongful physical contact with another person without consent. Even a touching of a person constitutes a battery if done without consent and in a rude, violent, and angry or insolent manner." <u>Id.</u>

Based on the facts alleged, Prince has stated claims against Vogel for assault and battery. Furthermore, the exercise of

## Conclusion

Prince's retaliation claims against MSG pursuant to Title VII, the NYSHRL, and the NYCHRL were not the subject of Defendants' motion to dismiss the Complaint in part. Defendants' motion is denied with respect to the Complaint's Fourth Cause of Action. Defendants' motion is otherwise granted. Leave to file an amended complaint within twenty (20) days is granted.

It is so ordered.

New York, NY
May 6 , 2005

ROBERT W. SWEET
U.S.D.J.