UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

COURTNEY PRINCE,

Plaintiff,

04 Civ. 8151 (RWS)

- against -

O P I N I O N

MADISON SQUARE GARDEN, a corporation;
JASON VOGEL, an individual; and RYAN
HALKETT, an individual,

Defendants.

-----------------------------------------X

A P P E A R A N C E S:

OUTTEN & GOLDEN
Attorneys for Plaintiff
Three Park Avenue, 29th Floor
New York, NY 10016
By: KATHLEEN PERATIS, ESQ.
    TAMMY MARZIGLIANO, ESQ.
    Of Counsel

MORGAN, LEWIS & BOCKIUS
Attorneys for Defendants
101 Park Avenue
New York, NY 10178
By: CHRISTOPHER P. REYNOLDS, ESQ.
    MELISSA C. RODRIGUEZ, ESQ.
    Of Counsel

**Sweet, D.J.,**

Defendants Madison Square Garden, L.P. (the "Garden"), Jason Vogel ("Vogel"), and Ryan Halkett ("Halkett")[1] (collectively the "Defendants") have moved pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss the First, Second, and Third causes of action against the Garden and the Second, Third, Fifth, and Sixth causes of action against Halkett set forth in the Amended Complaint of plaintiff Courtney Prince ("Prince" or the "Plaintiff"). For the reasons set forth below, the motion is denied.

## Prior Proceedings

The prior proceedings in this action were set forth in the opinion of this Court of May 6, 2005, Prince v. Cablevision Systems Corporation, No. 04 Civ. 8151 (RWS), 2005 WL 1060373 (S.D.N.Y. May 6, 2005) (the "May 6 Opinion"), familiarity with which is assumed.

Following the entry of the May 6 Opinion, Prince filed her Amended Complaint. The First, Second, and Third causes of action allege claims arising out of a hostile work environment under federal, state, and city laws respectively. The Second and

---

[1] Although the complaint and the amended complaint name "Ryan Halkatt" as a defendant, the defendants, presumably possessed of superior, undisclosed knowledge, have referred to him as "Ryan Halkett," which version will be adopted hereafter.

1

Third causes of action also allege a claim against Halkett as well as the Garden. The Fifth and Sixth causes of action allege that Halkett aided and abetted the retaliation alleged to have been committed against Prince in violation of New York State and New York City law.

Defendants moved to dismiss the Complaint on June 6, 2005. This motion was heard and marked fully submitted on September 7, 2005.

## The Parties

Prince is a professional figure skater who was employed as a member and captain of the Ranger City Skaters (the "Skaters"). The Skaters are ice skating cheerleaders of the New York Rangers (the "Rangers"), a professional hockey team. (See Am. Compl. ¶ 1).

The Garden is a limited partnership, and the former employer of Prince. (See id. ¶¶ 17, 21).

Vogel is an employee of the Garden and deputy director of public relations for the Rangers. (See id. ¶ 23).

Halkett, who was Prince's immediate supervisor, is employed by the Garden as the director of game-day presentation for the Rangers. (See id. ¶ 22).

2

**The Facts**

The following facts are drawn from the allegations contained in the Complaint. All well-pleaded allegations are accepted as true for the purposes of this motion. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The following statements do not constitute findings of the Court.

Prince was hired by the Garden in the fall of 2002 to be a member of the Skaters, a group which was formed in 2002. (See Am. Compl. ¶ 21). She was made captain of the team in August 2003. (See id. ¶ 25). In this capacity, Prince's duties included communicating to the Skaters the directives of management. (See id.).

During her employment as captain of the Skaters, a period of less than six months, from August 2003 until she was fired on January 22, 2004, (Am. Compl. ¶¶ 25, 28), Prince has alleged that she was subjected to a sexually hostile work environment, that the Garden and her supervisors Halkett and Vogel, as well as unnamed Garden managers, treated her and the other Skaters not as employees whose job it was to work hard and perform with excellence as skaters on the ice at Ranger hockey games, but as sex objects who were expected to be large breasted, sexually alluring, to accompany or be available to Garden managers and others at after-hours parties and events, who were subjected to inappropriate and

unwelcome sexual conversation and physical contact from Garden
managers. Prince has alleged sixteen examples of this sexually
hostile work environment:

- The Garden and Halkett required that the Skaters,
  including Prince, be sexually alluring. Am. Compl.
  ¶ 28(a).

- Halkett told Prince that a Skater named Trina was
  too small breasted and directed Prince to tell
  Trina to stuff her bra. Am. Compl. ¶ 28(a).

- Halkett took steps to ensure that the Skaters did
  not get fat. Am. Compl. ¶ 51.

- Halkett made unwelcome sexual remarks to a Skater
  named Amea Bunting regarding her sex life and his.
  Am. Compl. ¶ 28(c).

- Halkett made disparaging remarks about the sexual
  morals of a Skater named Bridie. Am. Compl. ¶
  28(d).

- Halkett pressed Prince to tell him who the "wild
  girls" were among the Skaters. Am. Compl. ¶ 28(e).

- Vogel made unwelcome sexual advances to Prince and
  sexually assaulted her, and when the Garden and
  Halkett learned that Prince had complained about
  it, they fired her. Am. Compl. ¶¶ 33, 38.

- Vogel made unwelcome sexual advances to other
  Garden employees and the Garden is aware of such
  advances. Am. Compl. ¶ 28(f).

- The Garden managers including Halkett required some
  of the Skaters, including Prince, to fraternize
  with the Garden management. Am. Compl. ¶ 28(g).

- The Garden managers, including Halkett, routinely
  initiated unwelcome sexual conversations with
  Prince and other Skaters, both in their offices and
  also at Garden-sponsored post-game parties and
  gatherings in which the Skaters, including Prince,
  were expected to participate. Am. Compl. ¶ 28(h).

- Garden managers and supervisors, including Rososco,
  Vogel, and Halkett, took underage Skaters to bars

4

and restaurants and purchased alcohol for them. Am. Compl. ¶ 28(i).

- High level Garden manager Josh Rososco asked Prince about her relationship with her boyfriend and about which Skaters had boyfriends. Am. Compl. ¶ 28(j).

- At a Garden event, a guest of the Garden management made an inappropriate gesture of sexual arousal toward Prince. When she complained about it to Vogel, he told her that she engendered the same sexual arousal in him as the guest had manifested. Am. Compl. ¶ 30.

## Rule 12(b)6 Standard

The appropriate standard for this motion and for Title VII, NYSHR1, NYCHRL claims was set forth in the May 6 Opinion, at *3, and need not be rehearsed here.

## I.  Plaintiff Has Sufficiently Alleged a Hostile Work Environment Claim

Here, the sexual harassment claim is alleged to arise from Vogel's conduct directed to Prince on December 22, 2003 at Danny-O's, a statement by Vogel adopting a sexual arousal gesture by a guest directed to Prince (Am. Compl. ¶ 30), the requirement that the Skaters be sexually alluring and requiring that "some of the skaters fraternize (sic) with MSG management" (Am. Compl. ¶ 28(g)), that managers and supervisors met or took Skaters to bars and restaurants and bought alcohol for underage Skaters, and sexual remarks that Halkett told Prince that a Skater had to stuff her bra (Am. Compl. ¶ 28(a)), that Halkett spoke to Prince about pubic hair

5

and oral sex (Am. Compl. ¶ 28(b)), that Halkett spoke to a Skater about her sex life and his (Am. Compl. ¶ 28(c)), that Halkett disparaged the morals of a Skater, that Halkett and his superior sought information from Prince about the romantic and sex lives of some of the Skaters (Am. Compl. ¶¶ 28(c)(j)), that managers "routinely initiated unwelcome sexual conversations with Prince and other Skaters, both in their offices and also at the Garden, sponsored post-game parties and gatherings in which the Skaters, including Prince, were expected to participate." (Am. compl. ¶ 28(k).

Whether these allegations as alleged are sufficiently severe or pervasive to alter conditions of employment and create an abusive working environment and whether Prince subjectively perceived the environment to be abusive as set forth in Feingold v. New York, 366 F.3d 138 (2d Cir. 2004), quoted in the May 6 Opinion, is a close question. For the reasons set forth below, it is concluded that Prince has adequately alleged a claim of hostile work environment.

In order to state a cause of action for hostile work environment, Prince must allege that: (1) her workplace was permeated with conduct that was "sufficiently severe or pervasive to alter the conditions of her work environment;" and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." Van Zant v. KLM Royal Dutch

6

<u>Airlines</u>, 80 F.3d 708, 715 (2d Cir. 1996). The conduct in question "must be severe or pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.'" <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997). In other words, the first element of a hostile work environment claim requires allegations that demonstrate that the environment was both objectively and subjectively hostile or abusive. <u>See</u> <u>Gregory v. Daly</u>, 243 F.3d 687, 691-92 (2d Cir. 2001).

Courts are to look at the totality of the circumstances in determining whether conduct is severe or pervasive enough to create a hostile work environment. <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 70 (2d Cir. 2000). These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work." <u>Gregory</u>, 243 F.3d at 694 (quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 22-23, 114 S. Ct. 367, 126 L. Ed.2d 295 (1993)).

As an initial matter, Defendants argue that Prince may not support her claims with any alleged comments of Halkett regarding Bridie and Ms. Bunting. In response to this argument, Prince has cited <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 70 (2d Cir. 2000), and <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 150 (2d Cir. 1997). (Pl. Opp. at 9-10). However, the

7

Defendants continue to contend that Prince cannot rely on inadmissible hearsay statements, about which she has not alleged any timely personal knowledge, to carry her burden of pleading that her work environment was objectively and subjectively hostile.[2]

On a motion to dismiss pursuant to Rule 12(b)(6), the Court does not assess the sufficiency of the evidence that a plaintiff has or will put forth to support her claim. Rather, under Rule 12(b)(6), all of the factual assertions underlying Plaintiff's claim must be accepted as true and all reasonable inferences must be drawn in her favor. See Sweirkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed.2d 1 (2002). It is impossible and inappropriate to determine at this point in the litigation how Prince might go about proving the truth of the comments allegedly made by Halkett to Bridie and Ms. Bunting. Rather, as stated, the allegations must be accepted as true. Fed.

---

[2] Defendants cite Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 190 n.8 (2d Cir. 2001), for the proposition that the testimony of co-workers concerning incidents of harassment outside plaintiff's presence is inadmissible hearsay. This is a mischaracterization of the Second Circuit's analysis in Leibovitz. Initially, the passage cited was not a holding of the case, but rather an explanatory aside contained in a footnote. Additionally, the footnote to which Defendants refer states merely the Second Circuit's recognition that a "plaintiff's testimony that her co-workers told her of incidents of harassment by her employer outside her presence is likely inadmissible hearsay." Id. (emphasis added). It neither articulates a per se rule pertaining to such testimony nor makes a specific determination of the admissibility of the plaintiff's testimony in that case. More importantly, it should not be overlooked that Leibovitz involved a motion for summary judgment, which, unlike a motion to dismiss, entails consideration of the sufficiency of the evidence adduced to support a claim. Here, the Court is not presented with the manner in which Prince would seek to introduce evidence of the above comments.

8

R. Civ. P. 12(b)(6). Accordingly, it is inappropriate at this stage to consider whether or not the factual support underlying Prince's claim of hostile work environment constitutes hearsay.

Additionally, it should be noted that, even if Prince was unaware of the alleged comments at the time of her employment, they might be relevant to the pervasiveness of the hostile work environment. To be sure, a determination that she was unaware of these comments during her employment would render the statements irrelevant to her subjective perception of the environment. Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) ("Schwapp's awareness . . . could very well be relevant to Schwapp's reasonable perception of a hostile environment").

However, such testimony very well may be relevant to a determination of whether the hostility was severe and pervasive, from an objective standpoint, regardless of whether or not Prince was aware of or present for the comments at the time they were made. Indeed, "[b]ecause the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not herself be the target of other instances of hostility in order for those incidents to support her claim." See Wait v. Beck's North America, Inc., 241 F. Supp. 2d 172, 178 (N.D.N.Y. 2003) (quoting Leibovitz v. New York City Transit Auth., 252 F.3d 179, 182 (2d Cir. 2001)); see also, Schwapp, 118 F.3d at 111 (finding that the district court erred in

9

excluding from consideration alleged incidents of harassment that occurred outside of the plaintiff's presence).

Defendants further contend that Prince has failed to adequately allege hostile work environment discrimination, arguing that the complained of conduct was not sufficiently severe or pervasive to be actionable.

To support her claim, Prince relies primarily on Gregory v. Daly, 243 F.3d 687 (2d Cir. 2001), where the Second Circuit reversed the district court's dismissal of a hostile work environment claim. According to Defendants, Prince's reliance on Gregory is misplaced. In essence, Defendants argue that because Prince did not endure harassment as severe as that alleged by the plaintiff in Gregory, she has not adequately alleged a hostile work environment claim.

The plaintiff in Gregory alleged that her superior: (1) asked her whether she knew what a sexual perpetrator was; (2) explained in graphic detail how a rape may occur; (3) told her how easy it is to rape a woman; (4) described sodomy and anal intercourse relating to boys in detail; and (5) engaged in behavioral displays of a sexual nature. Gregory, 243 F.3d at 690.

Defendants are correct that the statements and conduct alleged in Gregory were more threatening in nature than those

10

alleged by Prince here. Taking the Amended Complaint in its totality, it does not contain allegations that Prince was subjected to the level of physical threats or degree of "combined verbal abuse, ostentatious and graphic references to sexual assault and women's vulnerability to it, and intimidating physical behavior" that the plaintiff in Gregory endured. Id.

Whether the alleged conduct is physically threatening is just one of the factors courts look to in determining whether an environment is hostile. Id. at 693. When laying out the factors, the Supreme Court in Harris noted specifically that the evaluation of whether workplace harassment rises to an actionable level is not "reducible to 'a mathematically precise test.'" Id. at 694 (quoting Harris, 510 U.S. at 22-23). Rather, the Second Circuit has noted that the list of factors was "meant simply to illustrate the sorts of considerations that courts should take into account in evaluating allegations of hostile work environment." Id. Therefore, assuming arguendo the conduct alleged was not threatening, that alone would not constitute grounds for dismissal.

Additionally, the fact that the conduct alleged in Gregory was more severe than that alleged here is not to say that Prince was not subjected to behavior that a reasonable person may consider intimidating and/or threatening. According to the Amended Complaint, following a Garden event, Vogel and another male allegedly told Prince they were taking her to a location where

several other Skaters agreed to go, but instead took her to a different bar, Daddy-O's, where none of Prince's fellow employees were located. While at this location, Vogel proceeded to aggressively solicit Prince for sex verbally and by allegedly putting his tongue down her throat. While, as the May 6 Opinion recounts, this incident, taken alone, does not constitute an actionable hostile work environment, see May 6 Opinion, at *9, this is not to say that Vogel's conduct would not be considered intimidating or even threatening to reasonable person.

This Court is also mindful of the Second Circuit's instruction that "the appalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable." Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 439 (2d Cir. 1999). Rather, "[t]he test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Whidbee, 223 F.3d at 70 (quoting Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997)). As such, while a mere offensive utterance is not sufficient to support a hostile work environment claim, see Harris, 510 U.S. at 22-23, a plaintiff need not allege facts indicating that she was assaulted or threatened with assault in order to survive a motion to dismiss a hostile work environment claim.

12

In the Amended Complaint, Prince has adduced factual assertions to support her claims and to put Defendants on notice of her claims and the grounds upon which they rest. Unlike the initial complaint, the Amended Complaint provides factual examples of the kind of conduct to which Prince alleges she was routinely subjected while employed by the Garden. In addition to the incident at Daddy-O's, she alleges that: (1) Halkett and the Garden required that the Skaters be sexually alluring and required them to stuff their bras; (2) Halkett made disparaging remarks about the sexual morals of a fellow Skater; (3) Halkett initiated unwelcome conversations with Prince and other Skaters about their sex lives, his sex life, pubic hair, and oral sex; (4) Vogel made unwelcome sexual advances toward Prince and other employees of the Garden. These allegations indicate the persistency with which such comments were made and that the incident at Daddy-O's was not simply an isolated episode.

The comments and conduct alleged in the Amended Complaint are insulting, demeaning, and objectifying, and could be considered severe by a reasonable employee. Accordingly, Prince has alleged that the harassment permeated her work environment and occurred with such frequency such that a "reasonable employee would find the conditions of her employment altered for the worse." Whidbee, 223 F.3d 62 (2d Cir. 2000).

13

As such, Prince's allegations are no longer analogous to those presented in Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998), where plaintiff's claim rested on merely two isolated incidents of purported harassing behavior. See May 6 Opinion, at *6, *9 (concluding that the single incident at Daddy-O's was not sufficiently severe to amount to an actionable hostile environment claim). Unlike the initial complaint, the Amended Complaint does more than buttress one isolated incident with general, conclusory allegations that the work atmosphere was "sexualized." See id. at *10-11.

Defendants also contend that this case is distinguishable from Horvath v. Am. Tissue Corp., 210 F. Supp. 2d 189 (E.D.N.Y. 2002), a case relied upon by the Plaintiff. In Horvath, plaintiff's supervisor constantly stared at her breasts, asked her to go out on walks, commented about her looks and kissed her hand. Id. at 190. When plaintiff asked her superior for help with work-related matters, he would stare at her breasts and respond by asking, "What's it worth to you?" Id. at 190. Defendants contend that the Court's denial of the motion to dismiss in Horvath was premised upon a finding that plaintiff's supervisor threatened to condition a term of plaintiff's employment on her submission to sexual advances. Id. at 194.

As noted, the question before the Court is not whether Prince's terms of employment were conditioned upon submission to

14

advances, but rather whether the terms of her employment were "altered for the worse." Harris, 510 U.S. at 21. Indeed, "it is fundamental to a hostile work environment claim that the terms of the plaintiff's employment are alleged to have been altered not by any change in benefits or employment status, but rather by 'discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive.'"[3] Fairbrother v. Morrison, 412 F.3d 39, 51 (2d Cir. 2005) (quoting Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004)). As such, the crucial question in such cases is not whether conditions like those in Horvath existed, but rather "whether the workplace atmosphere, considered as a

---

[3] Defendants similarly attempt to distinguish Hockeson v. N.Y. State Office of Gen. Servs., 188 F. Supp. 2d 215 (N.D.N.Y. 2002), and Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265 (S.D.N.Y. 2001), two other recent cases relied upon by Plaintiff. The harassing conduct in Hockeson included, inter alia, a co-worker with a screen-saver of a woman's breasts with cat's eyes in place of the nipples and sexually explicit e-mails. Hockeson, 188 F. Supp. 2d at 217. In Dooner, the plaintiff was subjected to sexually explicit terms and pejorative deviations of her name. Dooner, 157 F. Supp. 2d at 273. According to the Defendants, the Amended Complaint is devoid of allegations suggesting that any term or condition of Prince's employment was altered as a result of the alleged harassment, because Prince was not subjected to comments like in Hockeson that she had to "swim or sink" and that her next move was "out the door," or any conduct like that alleged in Dooner where plaintiff was assigned duties reserved for lower level employees and treated like a secretary. According to Defendants, the presence of such comments in these cases made clear that the harassment impacted the terms and conditions of each plaintiff's employment. Hockeson, 188 F. Supp. 2d at 217; Dooner, 157 F. Supp. 2d at 273. For the reasons set forth herein and as stated in Fairbrother, 412 F.3d at 51, and Dawson, 373 F.3d at 272, whether Prince's workplace atmosphere was altered for the worse need not be predicated on such comments, nor must she allege that she faced changed in responsibilities commensurate with a tangible employment action in order to sufficiently allege an actionable claim of harassment.

15

whole, undermined plaintiff['s] ability to perform [her] job[]."
Dawson, 373 F.3d at 274.

Prince points principally to the fact that she was
discharged in order to demonstrate that her workplace atmosphere
was altered for the worse. As explained below, the facts alleged
demonstrate that Prince's termination was a result of retaliation,
not of the hostile work environment itself. Nevertheless, the
Complaint suggests that the alleged harassment had other effects on
Prince's ability to perform her job, such that it cannot be said at
this stage that no reasonable person would find her terms or
conditions altered for the worse.[4]

On a motion to dismiss, "it is not the duty of this Court
to assess whether the allegations, if proved true, would allow
Plaintiff to ultimately prevail, but whether Defendants are given
adequate notice of the Plaintiff's claims and the grounds upon
which those claims rest." Hockeson v. N.Y. State Office of Gen.
Servs., 188 F. Supp. 2d 215, 219 (N.D.N.Y. 2002); see also, Wait,
241 F. Supp. 2d at 178 (citing Swierkiewicz, 534 U.S. at 511-513).
Accordingly, it is determined that Plaintiff has alleged various
acts that, taken together, a reasonable person could perceive as
hostile or abusive. Additionally, it is concluded that Prince has

---

[4] However, to prevail it will be necessary for Prince to
adduce evidence to support the claim that the terms and conditions
of her employment were altered in some fashion other than her
alleged retaliatory discharge.

16

alleged facts that, as a whole, support the claim that she subjectively found "the workplace [was] permeated with 'discriminatory intimidation, ridicule, and insult' that was sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Harris, 510 U.S. at 21 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)).

## II. **Prince Has Sufficiently Alleged Vicarious Liability**

### A. **A Basis For Imputing Liability To The Garden Has Been Adequately Alleged Under Federal Law**

The Defendants have also moved to dismiss the Complaint on the grounds that Prince has failed to allege facts sufficient to support imputing liability to the Garden.

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher v. City of Boca Raton, 524 U.S. 775, 807, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998). An employee is deemed to possess supervisory status if he or she has "the authority to affect the terms and conditions of the victim's employment." Mack v. Otis Elevator Co., 326 F.3d 116, 126 (2d Cir. 2003) (quoting Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027 (7th Cir. 1998)). The Second Circuit has held that

17

supervisory authority should not be narrowly defined as simply "the power to hire, fire, demote, promote, transfer, or discipline an employee." Id. at 126. Rather, the question Courts must ask is whether "the authority given by the employer to the employee enabled or materially augmented the ability of the latter to create a hostile work environment for his or her subordinates." Id.

Once the Court has resolved the threshold question of whether the harassing employee possesses supervisory authority, there are two situations that may arise. First, if the harassing employee takes a "tangible employment action such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," liability is automatically imputed to the employer. Huaman v. American Airlines, Inc., No. 00 Civ. 6336 (FB)(MDG), 2005 U.S. Dist. LEXIS 21777, at *8 (E.D.N.Y. Sept. 29, 2005) (quoting Ellerth, 524 U.S. at 761). "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages." Faragher, 524 U.S. at 807.

An employer asserting the Faragher/Ellerth affirmative defense bears the burden of proving the following two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee failed to take advantage of any preventive or

18

corrective opportunities provided by the employer or to avoid harm otherwise." Id. The Second Circuit has recently noted that because the employer bears the burden of proving the Faragher/-Ellerth defense, even summary judgment on this issue is cautioned against unless "the evidence is so overwhelming that the jury could rationally reach no other result." Fairbrother v. Morrison, 412 F.3d 39, 53 (2d Cir. 2005).

Prince has alleged that both of the alleged harassers, Halkett and Vogel, had supervisory authority and that the harassment ultimately culminated in the official act of discharge, rendering the Garden's liability automatic. The Defendants argue that the Amended Complaint fails to sufficiently allege that either Vogel or Halkett possessed the requisite "special dominance" to be considered supervisors for purposes of imputing liability to the Garden. Mack, 326 F.3d at 125.

With respect to Halkett, the Garden specifically contends that Halkett cannot be deemed to possess the requisite supervisory authority because he could not have terminated Prince without approval from upper management. As the Second Circuit made clear in Mack, however, supervisory authority does not turn on whether the employee has the sole and unfettered power to hire and fire. Mack, 326 F.3d at 126. Rather, in Mack the Court looked to whether the individual possessed "the authority to direct the employee's daily work activities" and to whether the power given by the

19

employer to the putative supervisor "enabled" him or "materially augmented" his ability to create a hostile work environment. Id. at 126-27.

In accordance with this standard, Prince has alleged facts sufficient to establish that Halkett possessed supervisory authority by alleging that he, along with other Garden managers, fired her. Accordingly, the Garden's contention that it may not be imputed with the conduct of Halkett is misplaced.

With respect to Vogel, the Garden similarly argues that Vogel cannot be deemed a supervisor because Prince has not alleged that he was the senior employee on site or that he was a part of the same reporting lines as Prince.

In order to be deemed a supervisor, an individual need not be a "nominal supervisor." Hernandez v. Jackson, 997 F. Supp. 412, 417 (S.D.N.Y. 1998). Rather, whether an individual is a supervisor turns on the nature of the relationship and whether in practice the individual can wield power that alters the employee's conditions of employment thereby augmenting his ability to create a hostile work environment. Mack, 326 F.3d at 126-27. Here, Prince has alleged that Vogel's ability to "affect her compensation and other terms and conditions of employment, including the authority to assign her to potentially valuable public appearanc-

20

es." (A. Comp. ¶ 23). It is concluded that this is a sufficient allegation for the purposes of vicarious liability.

While Vogel and Halkett properly have been pled supervisors, Prince has failed to allege a tangible employment action as a result of any alleged harassment. In her opposition, Prince has contended that the Garden is subject to automatic liability because she has alleged that "[a]s a result of the sexual harassment," she "suffered the tangible employment action of discharge." (Pl. Opp. at 11; Am. Compl. ¶ 35).

However, in the Amended Complaint, Prince fails to allege that she was terminated as a cause of any harassing conduct of Halkett or Vogel. See, e.g., Smith v. Unity Funeral Chapels, No. 00-7264, 2000 WL 1678775, at *2 (2d Cir. Nov. 8, 2000) (affirming dismissal of sexual harassment action as a matter of law where plaintiff failed to show a causal relationship between refusal of sexual advances and adverse employment action); Adeniji v. Admin. for Children Servs., NYC, 43 F. Supp. 2d 407, 430 (S.D.N.Y. 1999) (fact that the harasser was not involved in the decision, inter alia, "further weakens, if not entirely disproves [plaintiff's] theory that [harasser] caused his dismissal"); Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 434 (S.D.N.Y. 1998) (quid pro quo claim could not be sustained because there was no evidence of an adverse employment action or causal connection).

21

Here, Prince has alleged, both in the Complaint and again in the Amended Complaint, that she was terminated in retaliation for telling some of the Skaters that a member of management was a sexual predator. (Am. Compl. ¶ 38). The retaliation claim is distinct and separate from the charge of sexual harassment. Gregory, 243 F.3d at 698 (treating plaintiff's termination as a sex discrimination claim, and not as a separate quid pro quo sexual harassment cause of action); see also Lester v. Natsios, 209 F. Supp. 2d 11, 33 (D.D.C. 2003) (refusing to consider disparate treatment allegations in connection with hostile work environment claim and noting that "[d]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.").

Because Prince has not alleged a tangible employment action as a result of any alleged harassment, the Garden may avail itself of an affirmative defense to liability by demonstrating that: (1) it took reasonable steps to prevent and remedy harassment; and (2) Prince unreasonably failed to take advantage of any corrective or preventative opportunities provided by the Garden or failed to avoid harm otherwise. See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 760-61 (1998).

Because the Garden bears the burden on the affirmative defense and has not yet formally raised it, resolution of the adequacy of the Garden's investigation and the reasonableness of Prince's actions will be reserved for a later date. At present, there is no basis upon which to decide these issues as a matter of law as there appear to be factual questions surrounding both elements of the defense.

## III. **An Adequate Basis For Holding Halkett Individually Liable Under New York State And New York City Law Has Been Alleged**

Defendant Halkett has also moved to dismiss Prince's claim that Halkett should be held personally liable under the NYSHRL and the NYCAC as an employer and as an aider and abettor.

There are two bases for holding an individual liable under the NYSHRL -- as an employer under Section 296(1) or as an "aider or abettor" under Section 296(6). See N.Y. Exec. Law §§ 296(1), (6).[5] The New York Court of Appeals has held that an employee is not individually subject to suit under § 296 of the HRL as an employer "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by

---

[5] Because the language of the NYCAC is "virtually identical" to that of the NYSHRL, "[t]he same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL." Feingold, 366 F.3d at 158. Therefore, for the same reasons that the claims may proceed against Halkett under the NYSHRL, they may proceed under the NYCAC. Id.

23

others." Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995).

It is uncontested that Defendant Halkett does not have an ownership interest in the Garden. Halkett argues that he may not be held individually liable because he does not have the power to do more than carry out personnel decisions made by others. According to Halkett, while Prince alleges that Halkett had the power to hire and fire her and other Skaters, her allegation concerning Halkett's authority is made on "information and belief" only (Am. Compl. ¶ 22), which is insufficient to survive defendant's motion. Leibowitz v. Cornell Univ., No. 03 Civ. 9976, 2005 WL 267560, at *4 (S.D.N.Y. Feb. 3, 2005); Lesavoy v. Lane, 304 F. Supp. 2d 520, 527 (S.D.N.Y. 2004); Rose v. Goldman, Sachs & Co. Inc., 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001).

There is authority that "[c]onclusory pleadings on 'information and belief' are inadequate as a matter of law" to survive a motion to dismiss. Lesavoy, 304 F. Supp. 2d at 527 (quoting Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc., No. 95 Civ. 8450, 1996 WL 732634, at *5 (S.D.N.Y. Dec. 19, 1996) (dismissing complaint with conclusory and unsupported allegations based upon "information and belief")); see also Rose, 163 F. Supp. 2d at 242 (complaint with no specific factual allegations to enable court to evaluate information and belief assertions failed to state

24

a claim for sex discrimination). However, allegations pled on "information and belief" are proper if "accompanied by a statement of the facts upon which the belief is founded." Shopping Mall Investors, N.V. v. E.G. Frances & Co., Inc., No. 84 Civ. 1469, 1985 WL 210 (S.D.N.Y. Jan. 23, 1985). In addition to alleging, upon information and belief, that Halkett had the power to hire and fire her, the Amended Complaint also specifically alleges that he participated in discharging her. Such allegations have been held sufficient to survive a motion to dismiss, see, e.g., Wait, 241 F. Supp. 2d at 179, and are deemed so here.

With respect to aiding and abetting liability, Section 296(6) of the NYSHRL makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). According to the Second Circuit, this language imposes individual liability on "a defendant who actually participates in the conduct giving rise to a discrimination claim," irrespective of whether the individual possesses power to do more than carry out personnel decisions made by others. Tomka, 66 F.3d at 1317.

According to Halkett, he cannot be held individually liable as an "aider and abettor" of a discriminatory discharge

because one cannot aid or abet one's own conduct.[6]  See Chamblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 677 (S.D.N.Y. 2001) (under § 296(6) "primary actor cannot be an aider and abettor of his own actions"). It does seem illogical that Halkett may be held liable for "aiding and abetting" his employer's discrimination when the employer's discrimination claim consists of vicarious liability for Halkett's very conduct. However, Prince has not alleged that Halkett acted alone in the discriminatory conduct alleged, but rather acted with Vogel and other management to create the hostile environment. Additionally, in Tomka, the Second Circuit interpreted Section 296(6) as holding individually liable those within the employment relationship who primarily and directly perpetrated the harassment. Tomka, 66 F.3d at 1317; Dawson v. County of Westchester, 351 F. Supp. 2d 176, 199 (S.D.N.Y. 2004). In accordance with the Second Circuit's interpretation, it is too early to dismiss Prince's claim of "aiding and abetting" liability against Halkett under the NYSHRL and the NYCAC.

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss Prince's hostile work environment claim is denied. Additionally, Halkett's motion to dismiss Prince's New York State

---

[6] No similar challenge has been launched against the allegations of aiding and abetting liability with respect to Prince's retaliation claim.

and New York City law claims (Counts Two, Three, Five, and Six of
the Amended Complaint) is denied.

It is so ordered.

**New York, NY**
**April** *10* , 2006

ROBERT W. SWEET
U.S.D.J.